OSTERHAUS, J.;
Concurring.
I too conclude that the circuit court’s decision should be affirmed because Jud-kins’ claim did not comply with the statute of limitations.
■ But, with all respect for my colleagues’ views, I think that the Dickinson stabilization doctrine does apply to forestall the *66 statute of limitations when, as here, the government promises that its ongoing projects will restore a landowner’s devastated property. Various cases have cited this doctrine to prevent government from deploying promises to game the statute of limitations in inverse condemnation cases. See, e.g., Applegate v. United States, 25 F.3d 1579, 1582 (Fed.Cir.1994); Banks v. United States, 314 F.3d 1304, 1308-10 (Fed.Cir.2003); Mildenberger v. United States, 643 F.3d 938, 946-47 (Fed.Cir. 2011).
Applegate is most often cited. It involved a government promise to construct a sand transfer plant that would remedy government-caused erosion on coastal property. After decades of promises, the plant never got built. When landowners sued, and the government asserted a statute of limitations defense, the Federal Circuit applied Dickinson and permitted the suit to go forward. It said:
With plans for a sand transfer plant pending, the landowners had no way to determine the extent, if any, of the permanent physical occupation.... [Uncertainty has stayed accrual of the claim. The Government’s promise to restore the littoral flow destroyed any predictability of the extent of damage to the land.
Applegate, 25 F.3d at 1582-83 (emphasis added).
Likewise, here, I think that Walton County’s promises to Judkins allowed her lawsuit to be postponed, for a while anyway. It does not matter for purposes of the Dickinson stabilization doctrine that Judkins knew in 2002 that the County had flooded her property. Though the flooding was evident, the County promised to fix it and its ongoing work adjacent to her property kept the situation from immediately stabilizing or reaching permanency. See Dickinson, 331 U.S. at 749, 67 S.Ct. 1382 (finding the statute of limitations to begin when “the situation becomes stabilized [and] a final account may be struck”); Hillsborough Cnty. Aviation Auth. v. Ben-itez, 200 So.2d 194, 200 (Fla. 2d DCA 1967) (applying Dickinson because property owners “were uncertain just how serious the impairment would be or how long it would continue”).
Nevertheless, I still think that Judkins filed her case too late. Even applying Dickinson, her situation became permanent in 2004. What stabilized things at that point is that Judkins wrote the County a letter asking point-blank about “what [it] intended to do about resolving the problem [of water running onto her] formerly dry, accessible, and useable property?” The County responded in May 2004, by asserting that it did not cause Judkins’ flooded property situation; by disputing Judkins’ contention that her property had been dry, accessible, and useable; and by extending no promise to fix her flooded property. The letter declared instead that Judkins’ property had “always” been wetlands. And it was framed as the County’s “last correspondence on the matter.”
While the County’s various assertions in the letter about the cause and nature of the flooding remained hotly disputed, no genuine issue of material fact remained after the County’s letter as to Dickinson’s applicability. The letter ended Dickinson’s applicability because Judkins’ flooding situation effectively became permanent — her property remained flooded and the County expressed no intention of fixing it. Judkins produced no evidence in response to Walton County’s summary judgment motion to show that she reasonably could continue relying on whatever old promises the County had made prior to May 2004. So the situation stabilized and the four-year statute of limitations commenced. Because Judkins did not file her *67 inverse condemnation action until 2009, I agree that her claim is time-barred.